NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

F. BENNETT MANUFACTURING CO.,
Inc., Respondent.

No. 386, Docket 26761.

United States Court of Appeals
Second Circuit.

Argued May 11, 1961.

Decided June 5, 1961.

Jules H. Gordon, Atty., National Labor Relations Board, Washington, D. C. (Stuart Rothman, General Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Melvin J. Welles, Atty., National Labor Relations Board, Washington, D. C., on the brief), for petitioner.

David T. Berman, Brooklyn, N. Y., for respondent.

Before FRIENDLY and SMITH, Circuit Judges, and WATKINS, District Judge.*

## PER CURIAM.

This is a petition under 10(e) of the National Labor Relations Act, as amended (61 Stat. 136, 29 U.S.C.A. § 151 et seq.) for enforcement of an order of the National Labor Relations Board.

Respondent employed two men in the manufacture of instrument cases at a Brooklyn plant and two others at a second plant nearby. A representation election was won by the union (Seafarers International) by a vote of three to one. Bennett, president of respondent, immediately discharged the two employees at the second plant, Washington and Harvin. After the union was certified, Bennett asked for a copy of a union contract, but declined to sit down and bargain with the union.

Respondent's attack is upon the findings of discharge for union activity and of refusal to bargain. The attack must fail. There was testimony by the discharged employees that Bennett had, prior to the election, urged the workers to "vote no and we will get rid of the bums"; that immediately after the adverse result of the election, Bennett had employees Harvin and Washington "lock up" and go home; and that he told them at that time if they wanted to work they would have to "drop the union." There was further testimony that after the election, but before formal certification, Bennett said he would not sit down with the union "then or any other time." Seafarers' organizer Quinnonez stated that a later telephone request to bargain, after certification, was turned down flatly by Bennett. A letter sent that same day reiterating the union's request for a bargaining conference was answered thus: "We are always anxious to improve working conditions in our plant. If you have suggestions please advise us." Quinnonez testified that in response to still further union requests a few months later Bennett, though friendlier, was evasive and unwilling definitely to commit himself to the bargaining table. Although Bennett himself sharply controverts much of this evidence, the recommendations of the trial examiner, adopted by the Board, were founded upon sufficient evidence of eye-witnesses, if believed, to establish the discriminatory purpose of the discharges and to establish the lack of good faith intent to bargain in Bennett's procrastination in meeting with the union. On the record as a whole, substantial evidence supports the findings. This is enough. § 10(e), National Labor Relations Act, 29 U.S.C.A. § 160(e); Universal Camera Corp. v. N. L. R. B., 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; N. L. R. B. v. Local 294, International Brotherhood of Teamsters, etc., 2 Cir., 1960, 273 F.2d 696. The terms of the order are justified by the findings. The petition for enforcement is granted.

---

* U. S. District Judge for the Northern and Southern Districts of West Virginia, sitting by designation.